# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| STEVEN D. MORRISON, | ) |
|     Plaintiff, | ) 4:15-CV-00014 JWS |
|     vs. | ) ORDER AND OPINION |
| UNITED STATES OF AMERICA and CHENEGA INTEGRATED SYSTEMS, LLC, | ) [Re: Motion at docket 47] |
|     Defendants. | ) |

## I. MOTION PRESENTED

At docket 47, Defendant Chenega Integrated Systems, LLC (CIS) filed a motion for summary judgment. Plaintiff Steven Morrison (Plaintiff) filed an opposition at docket 51. CIS replied at docket 53. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

In January of 2012, Plaintiff was working for Pacific Alaska Freightways, Inc., as a commercial delivery driver and was assigned to make a delivery to Iceman Outfitters, a store within the confines of Eielson Air Force Base (the "Base"). Security services for the Base, including inspection of commercial delivery vehicles, were provided by CIS

pursuant to CIS's subcontract with TW & Company, Inc. (the "Subcontract"). TW in turn had a Security Forces Support Services Contract with the United States Air Force for security services at the Base.

After arriving at the Base for the delivery, Plaintiff exited his truck at the designated inspection area in order for the security guards to perform their mandatory inspection and paperwork. He waited in the designated area during the guards' inspection. While returning to his truck after the inspection, he slipped and fell on ice, injuring his right knee.

It is undisputed that drivers such as Plaintiff are required to exit their trucks for inspection before being allowed to enter the Base. It is undisputed that Plaintiff was parked where the CIS security guards had instructed him to park and was walking where he was expected and instructed to walk. It is undisputed that the area where he was walking was icy.

Plaintiff subsequently brought this lawsuit in federal court, alleging negligence and negligence per se against the United States and CIS. As to the negligence claim, Plaintiff alleges that the United States and/or CIS "negligently designed, constructed and/or maintained the Eielson front gate walk areas."[1] As to the negligence per se claim, Plaintiff alleges that the United States and/or CIS "violated rules, regulations, codes and/or statutes designed to protect persons such as [Plaintiff] from the type of harm he suffered . . . ."[2] CIS now asks the court to grant it summary judgment, arguing that it does not owe Plaintiff any duty to provide safe, ice-free walkways. It argues that it did not design or construct the front gate and inspection area on Base and that the United States is responsible for snow and ice removal on walkways, entryways, and roadways throughout the base, including the front gate and inspection area. Plaintiff opposes the motion, arguing that CIS owes Plaintiff a duty to maintain the walkways

---

[1] Doc. 17 at p. 5 (Complaint ¶ 28).

[2] Doc. 17 at p. 5 (Complaint ¶ 29).

1 and ground surfaces in the inspection area in a reasonably safe condition and to warn
2 him of any dangerous walkway or surface conditions based on its status as a tenant
3 and/or "occupier of land," as well as under the Subcontract.[3]

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[8] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[9] Once the moving party has met this burden, the nonmoving party

---

[3]Plaintiff does not dispute CIS's argument that CIS did not have any part in the design or construction of the front gate and inspection area, and therefore the negligence claim against CIS is limited to the maintenance issue.

[4]Fed. R. Civ. P. 56(a).

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6]*Id.*

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8]*Id.* at 323.

[9]*Id.* at 323-25.

must set forth evidence of specific facts showing the existence of a genuine issue for trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[11] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

## IV. DISCUSSION

### Negligence

Under Alaska law, the existence of a defendant's duty in a negligence case is a question of law which can be decided at the summary judgment stage. Summary judgment is appropriate when "no evidence tends to suggest that any duty has arisen between a defendant and plaintiff."[13] To determine whether a defendant owes a plaintiff a duty of reasonable care, the court first considers "whether a duty is imposed by statute, regulation, contract, undertaking, the parties' preexisting relationship, or existing case law."[14] If these sources do not resolve the issue, the court applies a set of public policy factors to determine whether an actionable duty exists.[15] The related, and sometimes intertwined, question regarding the scope of that duty is also an issue that can be properly decided at the summary judgment phase if the duty owed is "clearly and vastly narrower in scope than the one that the other party asserts in opposing

---

[10]*Anderson,* 477 U.S. at 248-49.

[11]*Id.* at 255.

[12]*Id.* at 248-49.

[13]*Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1205 (Alaska 1998); *see also Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013).

[14]*Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc.*, 354 P.3d 368, 376 (Alaska 2015).

[15]*Id.*

summary judgement."[16] However, summary judgment is generally disfavored in situations where no party disputes the existence of a duty, but the precise scope of that duty is in question. "[I]t is much harder to show that there are no genuinely disputed material facts when the existence of a duty is clear and the question is of its precise scope, or whether given conduct fulfilled it."[17]

CIS argues that summary judgment is appropriate here because the only reasonable inference to be taken from the undisputed facts is that CIS did not owe Plaintiff a duty of care with respect to his use of the walkways and surfaces in the inspection area. CIS argues that the United States was the landowner and had procedures for maintaining roadways and walkways and assigned those responsibilities to military personnel, not CIS. For instance, the evidence shows that removal of snow and ice from walkways and entryways of buildings on Base was assigned to each building's Facility Manager. The Facility Manager for the front gate and inspection area in January of 2012 was S.Sgt. Freeman, an active duty military member in the Security Forces Squadron. The responsibility for clearing snow and ice from any general roadway on base was assigned to the Civil Engineering Squadron. The Civil Engineering Commander in charge of road maintenance was Lt. Col. Michael Sheredy, another military member. Based on this evidence, CIS argues that it could not have owed Plaintiff any duty of care with regard to the condition of the walkways in the inspection area.

Plaintiff argues that, regardless of the Government's involvement in clearing snow and ice on the Base, Alaska case law still makes CIS liable here. He argues that courts have held tenants responsible for maintaining their leased premises in a reasonably safe condition, and therefore CIS was responsible for maintenance in the inspection area. Plaintiff does not provide any evidence to show that CIS was a tenant.

---

[16] *Arctic Tug*, 956 P.2d at 1203.

[17] *Id.* at 1204.

There is no lease agreement. Indeed, the fact that there was a Facility Manager responsible for maintenance of the inspection area shows that CIS did not occupy that portion of the Base to the exclusion of Government employees.

Plaintiff argues that CIS owes him a duty of care with respect to the condition of the surfaces in the inspection area because, under the facts here, CIS is an "occupier of land," even if it is not legally considered a tenant. Plaintiff relies on an Alaska Supreme Court case, *Moloso v. State*.[18] The court in *Moloso* quoted with approval a California case which stated that an "occupier of land" is liable when he is aware of a concealed condition that poses an unreasonable risk of harm and fails to warn others about or repair the condition.[19] In *Moloso*, however, the defendant was a landowner in possession of the property, and the court was discussing landowner liability. It did not discuss who constitutes an occupier of land, nor did it consider whether a defendant who is not a landowner, tenant, or exclusive user of the land but, rather, a subcontractor performing services for the landowner at certain locations on the property can nonetheless be considered an occupier. Thus, *Moloso* does not clearly establish the existence of a duty here.

Plaintiff does not cite any other case that is sufficiently on point. However, Alaska courts have adopted Restatement (Second) Torts § 343, which imposes liability on a "possessor of land" for certain concealed conditions. Section 343 reads as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.[20]

---

[18] 644 P.2d 205 (Alaska 1982).

[19] *Id*. at 219 (quoting *Rowland v. Christian*, 443 P.2d 561, 568 (Cal. 1968)).

[20] Restatement (Second) of Torts § 343 (1965).

A possessor of land is defined as "a person who is in occupation of the land with intent to control it."[21] Here, the evidence provided shows that the Government maintained at least some control over the inspection area. There was a Facility Manager assigned to it, and that person was "responsible for inspection of facilities and repair or reporting of discrepancies beyond the capability to repair."[22] Plaintiff does not provide any evidence regarding CIS's intent to control the property or its actual extent of control.

Plaintiff argues alternatively that the subcontract delegated the Government's duties as a landowner to CIS. The responsibility to remove snow and ice from the inspection area or to generally maintain that area in a reasonably safe condition was not explicitly delegated to CIS under the Subcontract. However, the Subcontract nonetheless requires CIS to use some level of care in performing security services. There is a provision in the Performance Work Statement, which is attached to the Subcontract, that required CIS to conduct inspections "in a safe manner while maintaining control of all personnel and vehicles during inspection."[23] This provision establishes a general duty of care on CIS in relation to its inspection activities. Another provision, Article 3 of the Subcontract, which neither party discusses, also references CIS's duty to the public. It states that CIS "will perform its services using that degree of skill and care ordinarily exercised under similar conditions by reputable members of [CIS's] profession practicing in the same or similar locality at the time of performance" and that CIS "shall exercise reasonable care to ensure the safety of the public and other workers with respect to those activities and portions of the work site over which it has control."[24] This provision, when read in conjunction with the "safe manner"

---

[21] Restatement (Second) of Torts § 328E (1965).

[22] Doc. 47-6 at p. 1.

[23] Doc. 47-1 at p. 8.

[24] Doc. 47-1 at p. 5.

provision in the Performance Work Statement, establishes at least some duty of care here.

While the court finds that CIS had a contractual duty of care in relation to Plaintiff's safety, summary judgment in favor of CIS may still be appropriate if that duty is "clearly and vastly narrower in scope" than Plaintiff contends.[25] CIS argues that the scope of any duty of care set forth in the contract does not extend to the removal of ice or warning about slippery conditions. It points to evidence to show that such a provision is only "boilerplate language that is used in each and every contract made by the U.S. Air Force in contracting for armed guard services."[26] The fact that the "safe manner" language is standard in contracts for security at all U.S. Air Force locations, even those without snow and ice, does not demonstrate that the duty is somehow too narrow to encompass the situation here. What constitutes a "safe manner" can certainly vary depending on the underlying circumstances and location of the services. CIS goes on to argue that the language merely "refers to CIS's duty to ensure that CIS conducts the armed security guard duties in a manner that is conscious to threats to the security of [the Base]."[27] CIS, however, does not provide any evidence to support its argument that its duty is limited as such, and it does not discuss the duty in relation to Article 3 of the Subcontract, which requires CIS to use a level of care ordinarily exercised by security guards in such a situation.

There are issues of fact remaining as to the extent of CIS's duty in this situation. Neither party provides specific evidence as to what would be considered standard practice for security operations conducted outdoors. However, the record contains evidence to support a finding that the ice may have been unreasonably slippery in the inspection area because vehicles' warm engines melt snow that then refreezes on top

---

[25]*Arctic Tug*, 956 P.2d at 1203.

[26]Doc. 53 at p. 7.

[27]*Id.*

of the polished concrete area, creating a thin sheet of ice.[28]  Plaintiff also presents evidence to show that sometimes CIS guards would warn drivers exiting vehicles about slippery conditions in the inspection area[29] and that, as part of CIS's duty to provide for the safety of its own workers, CIS would make ice cleats available to security officers under the inspection tent.[30]  Based on this evidence, a reasonable juror could conclude that CIS's duty to conduct inspections in a safe manner and perform services with the degree of care ordinarily exercised in the profession extended far enough to at least require CIS guards to provide some warning or safety mechanism with respect to the icy condition of the ground to those people exiting vehicles for mandatory inspection. Therefore, summary judgment is not appropriate.

**Negligence per se**

Under a negligence per se claim, a "[v]iolation of a statute or regulation can 'amount[] to negligence as a matter of law . . . when the statute or regulation at issue defines a standard of conduct that a reasonable person is expected to follow under the circumstances presented.'"[31] Put in other terms, negligence per se exists when there is a "legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it . . . ."[32]  Here, there is no statute, regulation, code, or rule that specifically commands CIS to do any specific act or defines a standard of conduct applicable to CIS.  Plaintiff argues that Alaska's civil jury instructions place a duty on CIS as an occupier of land.  The court finds this position untenable.  As noted above, there is

---

[28] Doc. 51-3 at p. 1; Doc. 51-4 at p. 3.

[29] Doc. 51-2 at p. 4.

[30] Doc. 51-2 at p. 3.

[31] *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 332 (Alaska 2012) (quoting *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 647 (Alaska 2007)).

[32] *Bachner v. Rich*, 554 P.2d 430, 442 (Alaska 1976).

nothing in the case law to suggest CIS is in fact an entity controlling the property, and, moreover, the jury instructions do not command CIS to do a specific act for the safety of others and therefore do not create a defined standard of care to apply under a negligence per se theory.[33] Plaintiff also argues that the American Standards of Testing Measures ("ASTM") provide the necessary standards of care for purposes of negligence per se. Plaintiff only provides incomplete excerpts of these standards, and fails to provide any evidence as to what these standards are or how they assign a duty to CIS.[34] Also, nothing in the evidence demonstrates that these standards were adopted or codified by any governing body so as to impose on CIS a duty to comply with these specific standards. While ASTM may be relevant with respect to the issue of what constitutes the applicable standard of care and a breach of that standard, they are insufficient to support a finding of negligence per se.

## V. CONCLUSION

Based on the preceding discussion, CIS's motion to dismiss at docket 47 is DENIED with respect to Plaintiff's negligence claim and GRANTED with respect to Plaintiff's negligence per se claim.

DATED this 20th day of June 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[33] *See Dahle v. Atl. Richfield Co.*, 725 P.2d 1069 (Alaska 1986) ("In order for a provision to be the basis of a negligence per se instruction, it must set forth a specific standard of conduct beyond that defined in a common law duty.").

[34] Doc. 51-4 at p. 2.