# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| STEVEN D. MORRISON, | |
| Plaintiff, | 4:15-CV-00014 JWS |
| vs. | ORDER AND OPINION |
| UNITED STATES OF AMERICA and CHENEGA INTEGRATED SYSTEMS, LLC, | [Re: Motion at docket 46] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 46, Defendant United States of America (the Government) filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure based on the court's lack of subject matter jurisdiction. Plaintiff Steven Morrison (Plaintiff) opposed the motion at docket 50. The Government replied at docket 54. The court directed that the parties file supplemental briefing at docket 56. The Government's supplement is at docket 58. Plaintiff's supplement is at docket 59. Oral argument was not requested and would not be of assistance to the court.

## II.  BACKGROUND

In January of 2012, Plaintiff was working for Pacific Alaska Freightways (PAF) as a commercial delivery driver and was assigned to make a delivery to Iceman Outfitters, a store within the confines of Eielson Air Force Base (Eielson or Base).  After arriving at Eielson for the delivery and exiting his truck for routine inspection and paperwork, Plaintiff alleges that he fell on an icy surface while walking back to his truck and injured his right knee.  He alleges that he was parked where the security guards had instructed him to and was walking where he was expected and instructed to walk.  He subsequently brought this lawsuit in federal court, alleging negligence and negligence per se against the Government and The Chenega Corporation, which was the company providing armed security guard services on Base pursuant to a subcontract.  The Government now requests the court dismiss all claims against it, arguing that the Federal Tort Claims Act (FTCA) does not waive the Government's sovereign immunity and confer jurisdiction here.

## III.  STANDARD OF REVIEW

"The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."[1]  A party may seek dismissal of an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[2]  Where the defendant raises a factual challenge to the court's subject matter jurisdiction, as opposed to a facial challenge to the subject matter jurisdiction as described in the complaint, and the issue of jurisdiction is not intertwined with the merits for the case,

---

[1] *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

[2] *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

the court is free to consider matters outside the pleadings.[3]  "'[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"[4]

## IV.  DISCUSSION

Under the framework of the FTCA, the Government has only provided a limited waiver of its sovereign immunity.  It may be held liable in a tort action "in the same manner and to the same extent as a private individual under like circumstances."[5]  In other words, the Government has only waived immunity in circumstances where state law would make a similarly situated private person liable.[6]  Consequently, this court only has jurisdiction over tort actions against the Government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[7]  Where there is no liability for a private entity in an analogous situation, the court must dismiss the action for lack of jurisdiction.[8]  Thus, to determine whether the court has jurisdiction over Plaintiff's negligence claims against the Government, it must analogize the government to a private actor in a similar situation and apply Alaska state law to determine amenability to suit.[9]

---

[3] *See Roberts v. Corrothers,* 812 F.2d 1173, 1177-78 (9th Cir. 1987); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

[4] *Kingman Reef,* 541 F.3d at 1195 (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

[5] 28 U.S.C. § 2674.

[6] *United States v. Olson*, 546 U.S. 43, 44 (2005).

[7] 28 U.S.C. § 1346(b)(1).

[8] *LaBarge v. Mariposa Cty.,* 798 F.2d 364, 366-67 (9th Cir. 1986).

[9] *Id.* at 366.

The Government argues that the exclusive remedy provision of Alaska's Workers Compensation Act ("AWCA") would bar suit against a similarly situated private actor, and therefore Plaintiff's claims against the Government cannot proceed under the FTCA. It believes that a similarly situated private actor in Alaska would be considered a "project owner" under the AWCA. A project owner is defined as "a person who, in the course of the person's business, engages the services of a contractor and who enjoys the beneficial use of the work."[10] A project owner has a defense against a negligence suit under the AWCA's exclusive remedy provision, AS § 23.30.055. That provision states that workers' compensation is the sole remedy available to an injured employee, and the benefit of that exclusive remedy provision extends not only to the employer of the injured employee but anyone else who is liable or "potentially liable" for securing workers' compensation under the AWCA.[11] Under AS § 23.30. 045(a), a "project owner" is potentially liable for securing workers' compensation for employees of a contractor or subcontractor if that contractor or subcontractor fails to do so,[12] and therefore benefits from the exclusive remedy provision.

---

[10]AS § 23.30.045(f)(2).

[11]AS § 23.30.055 states as follows: "The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death. . . . In this section, "employer" includes, in addition to the meaning given in AS 23.30.395, a person who, under AS 23.30.045(a), is liable for or potentially liable for securing payment of compensation."

[12]AS § 23.30.045(a) states as follows: "An employer is liable for and shall secure the payment to employees of the compensation payable . . . . If the employer is a subcontractor and fails to secure the payment of compensation to its employees, the contractor is liable for and shall secure the payment of the compensation to employees of the subcontractor. If the employer is a contractor and fails to secure the payment of compensation to its employees or the employees of a subcontractor, the project owner is liable for and shall secure the payment of the compensation to employees of the contractor and employees of a subcontractor, as applicable."

Here, an analogous private actor would be a company who contracted with another company to stock and manage the employee supply store on its business campus.  The Government argues that such a situation makes an analogous private company a "project owner" under the AWCA: the company engaged the services of a contractor, Iceman Outfitters, to manage and stock the campus's store, and the employer, by having Iceman Outfitters operate a store for its on-site employees, "enjoyed the beneficial use of the work."  Plaintiff argues that the Government is not considered a project owner under the AWCA because, by contracting with Iceman Outfitters, the Government engaged the services of "a vendor whose primary business is the sale or leasing of . . . goods."  A vendor is explicitly excluded from the AWCA's definition for "contractor."[13]  Consequently, a company who contracts with a vendor for goods would not be potentially liable for securing workers' compensation payments to the vendor's employees and thus would not benefit from the exclusive remedy provision.

Given the terms of the contract, it is not clear that Iceman Outfitters is merely a vendor.  Iceman Outfitters did not just supply goods to the Base; it also provided services in the form of operations manager of the Base's store.  That is, the Government did not just contract with Iceman Outfitters to have Iceman sell goods or equipment to it; it contracted with Iceman Outfitters so that Iceman Outfitters would "conduct operations" necessary to run the Base's store.[14]  However, even assuming Iceman Outfitters is indeed a contractor and the Government a project owner immune from tort suit by one of Iceman Outfitter's employees, such a fact does not resolve the question of whether the Government is liable for Plaintiff's injury because Plaintiff was not an employee of Iceman Outfitters at the time of his accident.  He was working for PAF.  If Iceman Outfitters is indeed a contractor of the Government, and PAF is a

---

[13] AS § 23.30.045(f)(1).

[14] Doc. 46-4 at p. 4.

subcontractor of Iceman Outfitters, then both Iceman Outfitters, as the primary contractor, and the Government, as the project owner, would be potentially liable for securing workers compensation for PAF's employees under § 23.30.045 and in turn would be immune from any tort suit. If, on the other hand, PAF is not a subcontractor, neither Iceman Outfitters nor the Government would be responsible for paying workers' compensation under § 23.30.045 to PAF's employees and in turn neither would be immune from suit. The court directed the parties to provide supplemental briefing on the issue.

The Government provided evidence that Iceman Outfitters uses PAF to deliver the goods Iceman Outfitters purchases from vendors in other states that will not transport goods to Alaska. When Iceman Outfitters purchases goods from a seller, the seller sends the order to PAF's port. PAF then puts the goods on a barge to Alaska. Once there, a PAF driver picks up the order and drives it to Iceman Outfitters. Iceman Outfitters has a "freight forwarding" account with PAF that establishes the shipping rates that Iceman Outfitters will have to pay. The Government argues that the presence of the account between Iceman Outfitters and PAF to deliver goods it purchases for the store, which it operates pursuant to a contract with the Government, makes PAF a subcontractor of the Government.

The Government relies on this court's decision in *Marinese v. United States*.[15] In that case, the plaintiff had flown freight from Ketchikan, Alaska, to Craig, Alaska, for his employer, Promech Air. Promech Air was authorized to carry U.S. mail from Ketchikan to Craig for the USPS based on certain federal statutes and regulations, and consequently, the plaintiff's plane was carrying mail for the Craig post office along with other freight to be delivered to various businesses in Craig. The plaintiff was delivering the mail to the post office in Craig when he was injured by the facility's freight door. The court found that Alaska's workers' compensation bar precluded a personal injury

---

[15]No. 1:10-cv-00008, 2013 WL 878284 (D. Alaska Mar. 7, 2013).

claim by the plaintiff because both defendant USPS and the driver's employer were engaged in the package delivery business and had a contract-like relationship inherent in the applicable law and regulations. It explained that a difference circumstance would arise had the Promech employee been delivering freight to a local store at the time of his injury; Promech's employee was not just delivering goods that a business had ordered or arranged to have brought to Craig, but rather he was doing the work of the USPS—transporting and delivering USPS mail—pursuant to a contract-like situation.

The situation here is distinguishable from *Marinese*. The relevant contracting parties, Iceman and PAF, are not engaged in the same business. PAF is a freight hauling and delivery service, Iceman Outfitters is not. That is to say, PAF was not contracting to do a part of Iceman's business as was the case in *Marinese*. Under Alaska law, a subcontractor relationship is only established if there is a "contractual obligation on the part of the person to be held a contractor" and "a subletting of a part of that obligation to the person to be held a subcontractor."[16] Here, assuming Iceman Outfitters is indeed a contractor, some examples of its obligations under the contract include the following: provide and operate an on-base store; set competitive pricing; keep certain hours; use the Government Purchase Card for customer billing; provide employee and sales reports; use certain quality control and audit procedures; and maintain the facilities in good repair. Shipping freight is not a listed obligation, and there is no evidence that Iceman Outfitters otherwise sublets any of its contractual obligations to PAF.

The court agrees with Plaintiff that PAF's involvement in this matter is that of an unaffiliated freight delivery service and not a subcontractor. Consequently, the Government is not considered a project owner in relation to Plaintiff's injury. It therefore does not benefit from the AWCA's exclusive remedy provision and is not immune from suit under the FTCA.

---

[16] *Thorsheim v. State*, 469 P.2d 383, 388 (Alaska 1970); AS § 23.30.045(f)(3).

## V. CONCLUSION

Based on the preceding discussion, the Government's motion to dismiss at docket 46 is DENIED.

DATED this 30th day of July 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT